IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC COOK, | ) | CASE NO. 1:08 CV 2807 |
| | ) | |
| Petitioner, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| KEITH SMITH, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

## Introduction

Before me by consent[1] is the petition of Eric Cook for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Cook is currently incarcerated at the Mansfield Correctional Institution serving an eight-year sentence for rape and patient abuse imposed by the Cuyahoga County Common Pleas Court after he was found guilty at a jury trial in 2005.[3]

Cook asserts two grounds for relief, contending that his rights to confront the witnesses against him were violated[4] and that the State did not present sufficient evidence to prove all elements of rape beyond a reasonable doubt.[5]  In response to the Confrontation Clause claim, the State argues that the state appellate court properly found the admission of

---

[1] ECF # 10.

[2] ECF # 1 at 1.

[3] *Id.*

[4] *Id.* at 6.

[5] *Id.* at 7.

the testimony in question harmless beyond a reasonable doubt.[6]  The State also maintains that the state appellate court correctly found that the prosecution presented sufficient evidence of force as an element of rape under Ohio law.[7]

As more fully developed below, I decide that the State's positions are well-taken and that Cook's petition should be denied.

### Statement of the Facts of the Case

**A.  Underlying facts and state trial**

The following facts come from the decision[8] of the Ohio appellate court.[9]  Essentially, Cook, a nurse, was cleaning Marlene Taylor, a patient, in the early morning hours of November 23, 2003, because Taylor soiled herself.[10]  Cook explained that he wrapped his fingers in peri-care cloth and cleaned the fecal matter off her body.[11]  After first denying any penetration, Cook later admitted that Taylor had fecal matter in her vagina, and he inserted his wrapped fingers about one quarter of an inch to clean the area.[12]

---

[6] ECF # 4 at 13-14.

[7] *Id.* at 17.

[8] Facts found by the state appellate court on its review of the record are presumed correct.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[9] ECF # 4, Attachment 1, Ex. 9 at 153-83.

[10] *Id.* at 154.

[11] *Id.*

[12] *Id.* at 155.

Later in the morning Taylor soiled herself again, and Pamela Peoples, a female nurse's assistant, began to clean her.[13]  As Peoples was cleaning Taylor, Cook came in, which caused Taylor to scream and ask for him to leave.[14]

Georgia Gassi, Taylor's daughter,[15] visited Taylor around noon that day.[16]  Gassi thought her mother seemed edgy and asked her what was wrong.[17]  Taylor told Gassi that a male nurse sexually abused her by "inserting a finger into her vagina while he cleaned her."[18]  The nurse in charge, Doris Schoenbeck, received a call about the incident after Gassi informed a nurse of what happened to Taylor.[19]

Schoenbeck and R.N. Diane Placko examined Taylor and contacted the Parma police to report an incident of alleged sexual abuse.[20]  Officer Tom Desmarteau responded to the complaint and testified that Taylor was "very concerned as to what took place."[21]  Taylor gave her statement to Desmarteau, but she died before trial.[22]

---

[13] *Id.*

[14] *Id.*

[15] ECF # 4, Attachment 3 at 5, 6.

[16] *Id.*, Attachment 1, Ex. 9 at 155.

[17] *Id.*

[18] *Id.* at 155-56.

[19] *Id.* at 156.

[20] *Id.*

[21] *Id.*

[22] *Id.*

The Grand Jury indicted Cook on one count of rape and one count of patient abuse.[23] Cook pleaded not guilty and was tried before a jury.[24]  Because Taylor died before trial, the court allowed Gassi, Schoenbeck, and Desmarteau to testify to Taylor saying Cook penetrated her vagina with his finger.[25]

On September 1, 2005, the jury returned guilty verdicts on both charges.[26]  On November 1, 2005, the trial court determined Cook a sexual predator and sentenced him to eight years for rape and six months for patient abuse, to be served concurrently.[27]

**B.     The direct appeal**

Cook, through new counsel,[28] timely appealed his conviction,[29] raising ten assignments of error:

> 1.     Cook's state and federal constitutional right to confront the witnesses against him was violated when the testimonial and hearsay statements of the deceased alleged victim to the police and others were introduced against him.[30]

---

[23] *Id.* at 156-57.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 153.

[29] *Id.* at 154.

[30] *Id.* at 157.

-4-

2.   Cook's due process right to a fair trial was violated by the introduction of unfairly prejudicial "other acts" evidence in violation of Evid. R. 404(B) and 403.[31]

3.   The trial court erred to the prejudice of Cook when it conducted a voir dire of an eighty-one year old witness in the presence of the jury.[32]

4.   The court's decision finding Cook guilty of forcible rape was not supported by sufficient evidence when there was no evidence of force whatsoever.[33]

5.   The court's decision finding Cook guilty of patient abuse was not supported by sufficient evidence when there was no evidence of physical harm whatsoever.[34]

6.   The court erred in failing to preserve the witnesses' prior written statements for appeal after determining that no inconsistencies existed.[35]

7.   Cook was denied his right to effective assistance of counsel when the defense counsel failed to protect his interests at trial.[36]

8.   The jury's verdict was against the manifest weight of the evidence.[37]

9.   The court's decision finding Cook to be a sexual predator was not supported by sufficient evidence and was against the manifest weight of the evidence.[38]

---

[31] *Id.* at 166.

[32] *Id.* at 168.

[33] *Id.* at 169.

[34] *Id.* at 171.

[35] *Id.*

[36] *Id.* at 173.

[37] *Id.* at 175.

[38] *Id.* at 176.

10. The court's consideration of disputed, uncharged conduct and the resulting increase in sentence violated Cook's Fifth Amendment due process right, his Sixth Amendment right to have any disputed fact that would increase his penalty submitted to a jury and his Eighth Amendment right against cruel and unusual punishment.[39]

Cook argued under his first assignment of error that Gassi, Schoenbeck, and Desmarteau should not have been able to testify that Taylor said Cook penetrated her vagina with his finger.[40]  Under his fourth assignment of error Cook submitted that there was not enough evidence of force for a rape conviction.[41]

On February 15, 2007, the court of appeals affirmed the conviction.  The court overruled every one of the assignments of error and, in particular, those assignments related to the current grounds for relief.  The court found that the testimony of Desmarteau was testimonial and was not admissible; however, it was duplicative, and the error was harmless.[42]  The court also found that there was a sufficient amount of force, because the amount of force needed was minimal, given Taylor's age and status as a patient.[43]

Cook then filed a timely appeal to the Ohio Supreme Court.[44]  In this appeal Cook narrowed his assignments of error to two propositions of law.

---

[39] *Id.* at 180.

[40] *Id.* at 157.

[41] *Id.* at 169.

[42] *Id.* at 166.

[43] *Id.* at 170-71.

[44] ECF # 4, Attachment 1, Ex. 10 at 185.

Proposition of Law 1:  When hearsay testimonial statements are offered against a defendant at trial, despite the fact that the defendant had no opportunity to cross-examine the declarant, the defendant's Sixth Amendment rights are violated and any conviction based on such statements must be vacated.[45]

Proposition of Law 2:  When no rational trier of fact would have found force to have been established beyond a reasonable doubt, a rape conviction is based on insufficient evidence.[46]

On August 29, 2007, the Ohio Supreme Court denied Cook leave to appeal and dismissed the appeal as not involving any substantial Constitutional question.[47]

## C.    Petition for writ of habeas corpus

Cook filed a timely petition for habeas corpus on December 1, 2008.[48]  In the petition Cook raised two grounds for relief:

Ground one:  Cook's Sixth and Fourteenth Amendment rights to confront the witnesses against him were violated when hearsay testimonial statements of a deceased witness were used against him.[49]

Supporting facts:  "Over objection, an investigating officer was permitted to testify that the patient told him that Cook placed his fingers, wrapped in a medical cleaning cloth, in her vagina when he was cleaning diarrhea from her perineal area. This statement was obtained during an investigation of the matter by the officer, and not while the patient was making an initial report of

---

[45] *Id.*, Attachment 1, Ex. 11 at 191.

[46] *Id.* at 192.

[47] *Id.*, Attachment 1, Ex. 12 at 229.

[48] ECF # 1.

[49] *Id.* at 5.

the incident or asking for assistance. The patient died before the trial commenced, and was never cross-examined about her allegations."[50]

Ground two:  The state failed to present sufficient evidence to prove all elements of rape beyond a reasonable doubt thus violating Cook's Fifth and Fourteenth Amendment due process rights.[51]

Supporting facts:  "The evidence adduced at trial established that the patient was elderly and infirm, and that Cook was responsible for her comfort, hygiene, and well-being. While the record contains Cook's statement that on the morning in question he included the patient's vaginal area while cleaning her perineal area, and also contains allegations from the patient that such cleaning involved vaginal penetration, there was no evidence of the use of force or threat of force on Cook's part."[52]

The State has responded to ground one by arguing that the testimony admitted from Desmarteau was testimonial but its admission harmless beyond a reasonable doubt; nontestimonial statements by other witnesses provided the same evidence.[53]  The State responded to ground two by arguing that the Ohio state law regarding rape requires that it can be something subtle and psychological, and the appeals court found the force to be sufficient in this case.[54]

In his traverse Cook states that there is "grave doubt" that Desmarteau's testimony did not have a substantial and injurious effect on the verdict.[55]  Cook further argues that

---

[50] *Id.*

[51] *Id.* at 7.

[52] *Id.*

[53] ECF # 4 at 12.

[54] *Id.* at 17.

[55] ECF # 5 at 3.

Desmarteau's testimony was critical to the State's case, and it should not be considered simply duplicative.[56] Also, Cook maintains that Taylor's emotional state alone is not enough to prove, beyond a reasonable doubt, use or threat of force.[57]

## Analysis

**A.    Standards of review**

**1.      *Federal constitutional issue decided on the merits by the state court***

Under the controlling statute, a writ of habeas corpus may issue from the federal court where the state court has previously adjudicated the merits of a constitutional claim only if that state court decision was contrary to clearly established federal law or was an unreasonable application of that law to the petitioner's case.[58] A federal law is clearly established for the purpose of providing a basis for habeas relief only by the holdings of the Supreme Court of the United States, not its dicta.[59] Moreover, the law must be clearly established at the time of the state court decision being challenged by the petitioner.[60]

Habeas courts must give independent meaning to the phrases "contrary to" and unreasonable application of" contained in the statute.[61] A state court decision is "contrary

---

[56] *Id.* at 5.

[57] *Id.* at 7.

[58] 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).

[59] *Williams*, 529 U.S. at 412.

[60] *Id*.

[61] *Id.* at 404-05.

to" clearly established federal law if it reaches a conclusion opposite to that reached by the Supreme Court on a question of law or arrives at an opposite result when considering a materially indistinguishable set of facts from that involved in a Supreme Court holding.[62]  A state court adjudication involves an "unreasonable application" of clearly established federal law if the state court initially correctly identified the applicable legal principle from the holdings of the Supreme Court but then unreasonably applied that principle to the facts of the petitioner's case.[63]  Relief is available here only if the state court decision was "objectively unreasonable" and not simply erroneous or incorrect,[64] or if the state court unreasonably refused to extend a legal principle to a new context.[65]  In this regard, a federal court's review of a state court decision on the merits is "highly deferential,"[66] since the presumption is "that state courts know and follow the law."[67]

**2.**    ***Confrontation Clause/hearsay***

In *Crawford v. Washington*,[68] the Supreme Court stated that the Confrontation Clause of the Constitution bars the admission of testimonial statements made by witnesses out of court unless the declarant is unavailable and the accused has had a prior opportunity to

---

[62] *Id*. at 405-06.

[63] *Id*. at 407-08.

[64] *Id*. at 409-11.

[65] *Id*. at 407.

[66] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*).

[67] *Holland v. Jackson*, 542 U.S. 649, 655 (2004).

[68] *Crawford v. Washington*, 541 U.S. 36 (2004).

cross-examine the witness.[69] *Crawford* did not provide a comprehensive definition of what constitutes a "testimonial" statement, but indicated that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."[70]

As the Sixth Circuit has observed in construing *Crawford*, "the determinative factor in determining whether a declarant bears testimony [*e.g.*, whether a statement is testimonial within the ambit of *Crawford*] is the declarant's awareness or expectation that his or her statements may later be used at trial."[71]  In that regard, the Supreme Court has held since *Crawford* that statements made to police with the primary purpose of assisting them in meeting an ongoing emergency are nontestimonial, while those made to police under circumstances that objectively indicate that there is no ongoing emergency and the "primary purpose" of the police questioning is to establish or prove past events potentially relevant to later criminal prosecution are testimonial.[72]

Violations of the Confrontation Clause are subject to harmless error analysis.[73]  As the Supreme Court held in *Fry v. Pliler*,[74] the correct standard by which a federal habeas court

---

[69] *Id.* at 68-69; *United States v. Cromer*, 389 F.3d 662, 671 (6th Cir. 2004).

[70] *Id.* at 68.

[71] *United States v. Saget*, 377 F.3d 223, 226-27 (6th Cir. 2004), citing *Crawford*, 541 U.S. at 52.

[72] *Davis v. Washington*, 547 U.S. 813, 823 (2006).

[73] *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007).

[74] *Fry v. Pliler*, 551 U.S. 112 (2007).

must evaluate whether a state court's erroneous constitutional decision is harmless is the "substantial and injurious effect" test of *Brecht v. Abrahamson.*[75]  *Brecht* requires that the error be shown[76] to have had a "substantial and injurious effect in or influence in determining the jury's verdict."[77]  As the Supreme Court stated subsequent to *Brecht*, the question to be answered in a *Brecht* review is "whether the jury verdict actually rendered in this trial was surely attributable to that error."[78]  In that regard, the Sixth Circuit has held that the reviewing court "must consider such factors as 'the importance of the witness'[s] testimony in the prosecutor's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, ... and, of course, the overall strength of the prosecution's case.'"[79]

---

[75] *Id.* at 114, citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *Wilson v. Mitchell*, 498 F.3d 491, 502-04 (6th Cir. 2007).

[76] While the habeas petitioner does not bear the burden of proving harmless error, *O'Neal v. McAninch*, 513 U.S. 432, 435-39 (1995), it is unclear if the burden of proof is with the government to show an error was not harmless, *see*, *Gray v. Moore*, 520 F.3d 616, 626 n.2 (6th Cir. 2008) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 81 n.7 (2004), or if the harmless error inquiry is solely for the court to determine without requiring either side to bear a burden of proof.  *See*, *O'Neal*, 513 U.S. at 436-37 ("The case before us does not involve a judge who shifts a 'burden' ..., but rather involves a judge who applies a legal standard .... In such a case, we think it conceptually clearer for the judge to ask directly, 'Do I, the judge, think that the error substantially influenced the jury's decision?' than for the judge to try to put the same question in terms of proof burdens ....").  As such, my understanding in light of the Supreme Court's holding in *O'Neal* is that conducting the *Brecht* inquiry here is a matter for the Court without reference to burdens of proof.

[77] *Brecht*, 507 U.S. at 637; *Doan v. Carter*, 548 F.3d 449, 459 (6th Cir. 2008).

[78] *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993).

[79] *Stallings v. Bobby*, 464 F.3d 576, 582 (6th Cir. 2006), quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

-12-

In addition, as the Sixth Circuit very recently stated, in this Circuit "*Brecht* is always the test [for harmless error], and there is no reason to ask both whether the state court 'unreasonably' applied *Chapman*[80] under the AEDPA and, further, whether the constitutional error had a 'substantial and injurious effect on the jury's verdict."[81] Rather, "a habeas court may go straight to *Brecht* with full confidence that the AEDPA's stringent standards will also be satisfied."[82]

### 3.  *Sufficiency of the evidence*

Because the Due Process Clause of the Constitution does not permit a state to convict a person of a crime without proving all the elements of the offense beyond a reasonable doubt,[83] a claim that insufficient evidence was adduced in support of a conviction initially involves an examination of state law to determine the elements of the offense that the state was required to prove, followed by a federal question as to whether those elements were proved at trial in compliance with due process.[84]

Under the clearly established federal law of *Jackson v. Virginia*,[85] sufficient evidence to support a state criminal conviction will be found if, after viewing all the evidence, and the

---

[80] *Chapman v. California*, 386 U.S. 18 (1967).

[81] *Ruelas v. Wolfenbarger*, 580 F.3d 403, 412 (6th Cir. 2009).

[82] *Id*. at 413.

[83] *See*, *Fiore v. White*, 531 U.S. 225, 228-29 (2001).

[84] *Ducic v. Moore*, 1:07-cv-1234, 2008 WL 2783492, at *6 (N.D. Ohio July 17, 2008) (citation omitted).

[85] *Jackson v. Virginia*, 443 U.S. 307 (1979).

-13-

reasonable inferences to be drawn from the evidence, in the light most favorable to the prosecution, the federal habeas court can conclude that any rational trier of fact could have found each element of the crime proven beyond a reasonable doubt.[86]  This standard of review does not permit the federal habeas court to make its own subjective determination of guilt, but gives full play to the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[87]  In particular, when considering a claim of insufficient evidence, an attack on the credibility of a witness is understood to be simply a challenge to the quality or weight of the prosecution's evidence, and so is not cognizable as a challenge to the sufficiency of the evidence.[88]

## B.    Application of standards of review

### 1.    *Cook's first ground for relief must be denied because the improper admission of testimonial hearsay was harmless error.*

I note initially that both parties agree – and the evidence supports – that Officer Desmarteau's testimony about what the victim told him was testimonial hearsay under the clear teaching of *Davis* and so was improperly admitted into evidence at Cook's trial. Accordingly, also as recognized by both parties, the issue is whether the error in admitting this testimony was harmless.  Viewing this issue under the *Brecht* test as to whether this testimony had a "substantial and injurious effect" on Cook's verdict, as that test is applied

---

[86] *Id*. at 324.

[87] *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

[88] *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).

through the use of the *Delaware v. Van Arsdall*[89] factors, I conclude for the following reasons that the error was harmless.

To restate, *Van Arsdall* sets forth five factors to consider when reviewing if an alleged error had a substantial and injurious effect on the jury's verdict:  (1) the importance of the witness to the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of corroborating or contradictory evidence; (4) the extent of cross-examination; and (5) the overall strength of the prosecution's case.[90]  I also note here that, under the recently stated Sixth Circuit teaching in *Ruelas v. Wolfenbarger*, it is appropriate for this Court to proceed directly to a *Brecht* analysis without first addressing whether the state appeals court reasonably applied its own harmless error test.[91]

In that regard, I note first that Officer Desmarteau was one of three people who testified to the jury that the victim identified Cook as having penetrated her vagina with his finger.  Specifically, as the state appeals court observed, the victim's daughter, a nurse, and Officer Desmarteau all testified that the victim told them of what Cook had done.[92]  In fact, in addition to her own testimony as to what the victim had told her, the nursing supervisor, Doris Schoenbeck, was permitted at trial to read to the jury portions of the victim's medical record which contained:  (1) the statement from the victim's daughter relating what her

---

[89] *Van Arsdall*, 475 U.S. at 684.

[90] *Id.*

[91] *Ruelas*, 580 F.3d at 412-13.

[92] ECF # 4, Attachment 1, Ex. 9 (state appeals court decision) at 4.

mother had told her about the assault; (2) the statements from Nurse Diane Placko, who, along with Nurse Schoenbeck, examined the victim in her room immediately after receiving the report from the victim's daughter, which also recounted that the victim told her and Nurse Schoenbeck that Cook "had put his finger in her vagina while cleaning her up."[93]

As the Ohio appeals court noted, the statements made by the victim to her daughter were non-testimonial, as they were confidential statements made by a mother to a daughter not with an expectation by the victim that they would later be used at trial.[94]  That finding is not disputed here.  As such, these statements were properly before the jury.  Similarly, as the state court also found, the statements made to Nurse Schoenbeck by the victim were also non-testimonial, as Schoenbeck was both a supervisor conducting an internal investigation regarding a complaint and a medical person administering aid to the patient.[95]  In addition, the appeals court concluded that the statements contained in the victim's medical record – which included statements by the victim herself and repetitions of her claim that Cook had penetrated her made to her daughter and Nurse Placko – were all properly admitted as part of a regularly kept medical record.[96]  Further, the jury also heard from an 81-year-old prior

---

[93] *Id*. at 3-4.

[94] *Id*. at 6.

[95] *Id*. at 9.

[96] *Id*. at 11.

victim who testified that Cook had committed a similar assault against her in a different facility approximately ten years earlier.[97]

Considering all this evidence – most of it ruled properly admitted and not disputed here – it is apparent that the testimony of Officer Desmarteau was cumulative of similar testimony of the victim's daughter and Nurse Shoenbeck. Cook attempts to argue here that although Officer Desmarteau's testimony was "similar" to the other testimony, it was different and not cumulative because if Officer Desmarteau had not testified "defense counsel would have made much of the fact that [the victim] made allegations to family members and employees of the nursing home, but not to law enforcement personnel."[98]

This is a weak reed. The fact that a zealous defense counsel would have sought to make a jury argument out of the absence of a witness does not convert that argument into a reason to think that the jury verdict here was "surely attributable" to the erroneous admission of Officer Desmarteau's testimony.[99] The jury had the specific testimony of the victim's daughter, as well as the results of the detailed investigation conducted by Nurse Schoenbeck, reflected in the records, which would be difficult to completely ignore simply because defense counsel wanted to raise a question as to why no police officer was testifying.

Furthermore, I also note that, in addition to the fact that Officer Desmarteau's testimony was not critical to the prosecution's case and was cumulative of other testimony,

---

[97] *Id*. at 14.

[98] ECF # 5 at 3.

[99] *Sullivan*, 508 U.S. at 279.

other evidence, including the testimony of the prior victim, all confirmed or was consistent with the victim's story and did not contradict it.  Overall, the prosecution's case, despite a lack of physical evidence, was strong, built on multiple instances of the victim relating a uniformly consistent account of her assault to various people, an account consistent with prior acts by Cook.

Contrary to Cook's argument here that the record as to the effect of the impermissible testimony is so evenly balanced that this Court would have "grave doubts" as to whether the error was harmless,[100] I find, by application of *Brecht* as understood through *Van Arsdall*, that, as related above, the record establishes that the error here was harmless.  Accordingly, Cook's first ground for habeas relief is denied.

**2.**     ***Cook's second ground for relief – insufficient evidence – must be denied because the state court decision denying this claim did not unreasonably apply the clearly established federal law of Jackson v. Virginia.***

The claim here rests on the assertion by Cook that although the element of force, or threat of force, which is essential to proving rape under Ohio law, may be established at a minimal level in the case of an older, more frail woman such as the victim, there must nonetheless be some evidence of force in the record, allegedly absent here, in order for the jury to convict Cook for rape.[101]  Because, he claims, there was "no explanation in [the appeals court's] opinion regarding how or when the prosecution made even this 'minimal'

---

[100] ECF # 5 at 5.

[101] *Id*. at 7-8.

-18-

showing[,]" the state appeals court "effectively removed the 'force or threat of force' element from Mr. Cook's indictment and, in so doing, unreasonably applied *Jackson v. Virginia*."

In this case, the state appeals court began its analysis by citing the correct test by which appellate courts examine the record for sufficiency of the evidence – a test set forth in Ohio in the second paragraph of the syllabus of *State v. Jenks*[102] wherein the *Jackson* standard promulgated by the United States Supreme Court is explicitly incorporated into Ohio law.[103]  The court, citing to decisions of the Ohio Supreme Court construing Ohio's rape statute, then noted that in Ohio the force needed for rape "is dependent upon the age, size and strength of the parties and their relationship to each other."[104]  Ohio law, the court further noted, also permits the fact finder to take account of "the vulnerability of the victim, the dependence of the victim and inherent power of the dependent" in making a finding that force was involved.[105]

As the Ohio Supreme Court held in *State v. Eskridge*,[106] which is the primary authority relied upon by the appeals court here, where the perpetrator was the victim's father who, at

---

[102] *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 at ¶ 2 of the syllabus (1991) (superseded on other grounds by Constitutional Amendment as stated in *State v. Smith*, 80 Ohio St. 3d 89, 684 N.E.2d 668 (1997)).  This paragraph of the syllabus explicitly cites *Jackson* and indicates that its standard for determining sufficiency of the evidence is followed in Ohio.

[103] ECF # 4, Attachment 1, Ex. 12 at 17.

[104] *Id.* (citations omitted).

[105] *Id.*

[106] *State v. Eskridge*, 38 Ohio St. 3d 56, 526 N.E.2d 304 (1988).

-19-

the time of the rape was babysitting her, the perpetrator had inherent, unequal power as a person in authority over the victim.[107]  That fact of unequal power held by a person in a position of authority, stated the *Eskridge* court, "'creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.'"[108]

In the present case, the appeals court applied the law as stated and found that "Cook was the caretaker of the victim, who was bedridden, elderly and infirm.  The victim and Cook were not equal in strength or age.  Given these factors, the victim was unable to defend herself.  Therefore, the force necessary to commit the crime of rape was minimal and less than might be required in relation to a younger, healthier woman."[109]

As discussed, the gravamen of Cook's argument here seems to be that the appeals court's decision was an unreasonable application of *Jackson* because its opinion did not identify precisely what individual pieces of evidence established that Cook displayed any physical force or even exerted any psychological pressure on the victim.  In fact, Cook misreads Ohio law as requiring any such showing.  As *Eskridge* makes plain, Ohio law will support a finding of force in circumstances, absent any findings of explicit threats or displays of physical force, where the defendant is in an unequal position of authority over the victim.

---

[107] 38 Ohio St. 3d at 59, 526 N.E.2d at 307.

[108] *Id.*, quoting *State v. Etheridge*, 352 S.E.2d 673, 681 (North Carolina 1987).

[109] ECF # 4, Attachment 1, Ex. 12 at 18.

There can be little doubt that the record here establishes that Cook was in such an unequal position of authority over his victim.  He was on the staff of the skilled nursing facility where the victim was a patient.  As the state appeals court noted, Cook entered the victim's room at her request in order to clean her "because she was too weak to use the restroom on her own and was incontinent."[110]  She was, as the state court says elsewhere, and which is supported by the uncontroverted facts, "bedridden, elderly and infirm" – a situation where Cook clearly possessed an unequal power of authority over the victim, and one in which Ohio law is clear that no further showing of physical force or explicit threats is required to establish force in the context of rape.

Accordingly, since the state appeals court here correctly identified the clearly established federal law applicable to this claim, and further reasonably applied that law to the facts of Cook's case, as previously described, his second claim for habeas relief is also denied.

## Conclusion

For the foregoing reasons, the petition of Eric Cook for a writ of habeas corpus is denied.

**IT IS SO ORDERED.**

Dated:   December 23, 2009                    s/ William H. Baughman, Jr.
                                              United States Magistrate Judge

---

[110] *Id.* at 1.